# United States Court of Appeals
## For the First Circuit

No. 05-1534

ANTONIO APONTE-TORRES ET AL.,

Plaintiffs, Appellants,

v.

UNIVERSITY OF PUERTO RICO ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Selya, Circuit Judges.

Juan P. Rivera-Román for appellants.
    Roberto Ariel Fernández, with whom José Luis González-Castañer
and González Castañer & Morales Cordero were on brief, for
appellees.

April 14, 2006

**SELYA**, **Circuit Judge**.  In this case, several employees of the University of Puerto Rico (U.P.R.) complain that their employer maintained "suspicious" files about their activities and used those files to inform employment decisions.  The district court dismissed their action.  After careful review, we conclude, as did the court below, that the plaintiffs' amended complaint fails to articulate a cognizable federal claim.  We also conclude that the district court did not err either in denying the plaintiffs leave to file a second amended complaint or in staying discovery for a brief interval pending its decision on the defendants' dispositive motion.  Consequently, we affirm.

## I.  THE FACTS ALLEGED

For reasons that shortly shall become apparent, we glean the relevant facts from the plaintiffs' amended complaint.

The fourteen plaintiffs are full-time employees at U.P.R.'s Mayaguez campus.  Within the last decade, they all have worked in the Cooperative State Research Education and Extension Service, which is connected with U.P.R.'s College of Agricultural Science and, more particularly, its Agricultural Extension Service Program (AESP).  The defendants include U.P.R. and its president, the Mayaguez campus and its chancellor, and the interim deans of both the College of Agricultural Science and the AESP.[1]  The

---

[1]Ironically, José R. Diaz-Alamo, an original defendant in this case, is not a party to this appeal.  Although Diaz-Alamo appears to have spearheaded the conduct complained of, the district court

individual defendants are sued in their official and personal capacities.

The plaintiffs allege in substance that the AESP has, for the last ten years, gathered information about eighty to ninety employees without their consent and "in a suspicious manner." The plaintiffs are part of that complement. Though saved, the information is not part of the plaintiffs' official personnel records.[2] These "illegal files" have the ostensible purpose "of identifying and/or classifying plaintiffs based on their membership in" some unidentified "professional association[s]" and/or the plaintiffs' "expressions against the [d]efendants" (not otherwise described). The files supposedly "contain[] information about alleged complaints against [p]laintiffs" and have been "used to deny hiring [and] promotions," as well as to shape employment termination decisions.

## II.  TRAVEL OF THE CASE

The plaintiffs filed suit in the United States District Court for the District of Puerto Rico on December 16, 2002. The following April, the court held a status conference, arranged for the plaintiffs to inspect the "suspicious" files, and directed them

---

granted his motion to dismiss for insufficient service of process on July 6, 2004. See Fed. R. Civ. P. 4(m). The plaintiffs have not challenged that order.

[2]The original complaint averred that, despite at least two requests, the plaintiffs had been refused access to the "suspicious" files prior to instituting suit.

to inform the court by the end of May whether they wished to continue prosecuting the case. On June 11, the plaintiffs stated that they had reviewed the files and wished to go forward. They proceeded to file an amended complaint.

The amended complaint supplemented the original complaint by confirming that the plaintiffs had accessed the files and adding some general allegations about their contents and use. Significantly, the amended complaint offered no specifics; for example, it neither limned any identified employment action nor related the files to the plaintiffs in any particularized way. After the defendants seasonably answered the amended complaint, the district court approved a discovery plan.

On July 9, 2004 — nine months after the filing of the amended complaint — the defendants moved to dismiss for, inter alia, failure to state an actionable claim. See Fed. R. Civ. P. 12(b)(6). Approximately one month later, they served the plaintiffs with hard copies of the disputed files. Then, on August 25, the defendants filed a motion to stay discovery. The plaintiffs opposed the motion to dismiss and sought leave to file a second amended complaint. Shortly thereafter, they filed an opposition to the requested stay of discovery.

On December 1, 2004, the district court stayed discovery pending a ruling on the motion to dismiss. It granted that motion on February 14, 2005. Treating the motion to dismiss as a motion

for judgment on the pleadings, see Fed. R. Civ. P. 12(c) —
apparently because the defendants already had answered the amended
complaint — the court held that the plaintiffs had failed to state
an actionable federal claim. The court simultaneously denied the
plaintiffs' request to file a second amended complaint, reasoning
that they had been "afforded discovery precisely to supplement their
allegations and [had] failed to adequately do so"; thus, the court
found "no reason [to] expend scarce judicial resources" in a
situation in which the plaintiffs had "already twice failed to state
a claim." This timely appeal followed.

## III. ANALYSIS

In this venue, the plaintiffs challenge the dismissal of
the amended complaint, the refusal to allow a second amended
complaint, and the stay of discovery. We address these points
sequentially.

### A. Dismissal of the Action.

Because the defendants previously had answered the amended
complaint, the district court appropriately treated their motion to
dismiss as one for judgment on the pleadings. See Fed. R. Civ. P.
12(c). This conversion does not affect our analysis inasmuch as the
two motions are ordinarily accorded much the same treatment. See
Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998);
Lanigan v. Vill. of E. Hazel Crest, 110 F.3d 467, 470 n.2 (7th Cir.
1997). We view the facts contained in the pleadings in the light

-5-

most flattering to the nonmovants (here, the plaintiffs) and draw all reasonable inferences therefrom in their favor. Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988). Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment. Rivera-Gomez, 843 F.2d at 635.

There is, of course, a modest difference between Rule 12(c) and Rule 12(b)(6) motions. A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole. See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2004). Here, however, the parties agree that the source of the pertinent facts is the plaintiffs' amended complaint. We turn, then, to that document, affording the district court's assessment of it de novo review. See Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 37 (1st Cir. 2004).

There is no heightened pleading standard in civil rights cases. Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66-67 (1st Cir. 2004). Consequently, we ask whether the amended complaint satisfies the basic notice pleading requirements of the Civil Rules. See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5 (1st Cir. 2005). To meet those requirements, a complaint must contain "a short and plain statement of the claim

showing that the pleader[s are] entitled to relief," Fed. R. Civ. P. 8(a)(2), and must "give the defendant[s] fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47 (1957).  For this purpose, we may draw upon documents annexed to the amended complaint or incorporated into it, as well as matters subject to judicial notice.  Centro Medico, 406 F.3d at 5.  We ought not, however, credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like."  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

In this instance, the plaintiffs shape their central cause of action around 42 U.S.C. § 1983.  To state a viable section 1983 claim, a plaintiff first must identify "an act or omission undertaken under color of state law."  Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001).  That precondition is easily satisfied here: Puerto Rico is considered equivalent to a state for section 1983 purposes, Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005), and the amended complaint alleges actions attributed to U.P.R. and its functionaries.  Since the case law establishes that U.P.R. is an arm of the Commonwealth, see Pinto v. Universidad de P.R., 895 F.2d 18, 18 (1st Cir. 1990), the amended complaint adequately alleges state action.

The next precondition presents more of an obstacle.  A plaintiff seeking to recover under section 1983 must allege what is colloquially known as "constitutional injury," that is, he or she

must identify a deprivation of some federally secured right. <u>Rogan</u>, 267 F.3d at 27. In this case, the plaintiffs put forward three theories of constitutional injury. As we shall see, the same factual inadequacies plague them all.

**1.** **<u>The First Amendment Theory</u>**. Although not well elucidated in the amended complaint, the plaintiffs' First Amendment theory, read charitably, focuses on adverse employment actions that supposedly were taken in response to protected associations or expressions (as documented in the "suspicious" files). While it is beyond cavil "that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech," <u>Rankin</u> v. <u>McPherson</u>, 483 U.S. 378, 383 (1987), the amended complaint does not sufficiently allege any such action here.

To state an actionable claim of this kind, an employee's complaint would have to give some concrete indication that the interdicted conduct was both constitutionally protected and a substantial or motivating factor in the adverse employment decision. <u>See</u> <u>Bd. of County Comm'rs</u> v. <u>Umbehr</u>, 518 U.S. 668, 675 (1996). The amended complaint fails to meet either part of this binary requirement.

In the first place, the amended complaint wholly fails to identify the associations or expressions about which the defendants gathered information. This shortcoming is all the more glaring

-8-

because the plaintiffs had court-ordered access to the "suspicious" files prior to the framing of their amended complaint. Despite this review, the plaintiffs have given us no factual basis — not even a skeletal one — on which to determine whether the defendants targeted any constitutionally protected expressive or associational conduct.

In the second place, the amended complaint utterly fails to identify any particular adverse employment action(s). It is, therefore, impossible to determine whether the defendants took any impermissible steps at all. The short of it is that the amended complaint contains a manifestly insufficient factual foundation to support a First Amendment claim.

2. **The Due Process Theory**. The plaintiffs' remaining two theories of constitutional injury are grounded in the Fourteenth Amendment. Initially, the plaintiffs argue that, by basing adverse employment actions on information contained in the "suspicious" files, the defendants deprived them of due process.

This theory is replete with problems. First, the amended complaint does not indicate whether the due process claim is of a procedural or substantive stripe. The plaintiffs' appellate brief is equally inscrutable on this point. There is obviously no grounding in the amended complaint for a substantive due process claim. Thus, following the district court's lead, we treat the claim as a procedural one.

To establish a procedural due process violation, a plaintiff must identify a protected liberty or property interest, Redondo-Borges, 421 F.3d at 7, and allege "that the defendants, acting under color of state law, deprived [them] of that . . . interest without constitutionally adequate process," PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). Assuming, without deciding, that the amended complaint identifies a protected property interest in employment, it nonetheless fails adequately to allege a deprivation. This is so because, as we already have emphasized, the amended complaint contains only general allusions to adverse employment actions, without a glimmer of specificity about particular actions taken against particular plaintiffs. That degree of extreme generality renders the amended complaint susceptible to dismissal. See, e.g., Educadores, 367 F.3d at 68.

Nor is this all. The amended complaint is devoid of any information about the process afforded to the plaintiffs at the time any adverse actions were taken. Without this rudimentary factual underpinning, no cognizable due process claim can be culled from the meanderings of the amended complaint. See Zinermon v. Burch, 494 U.S. 113, 126 (1990) (explaining that a court undertaking a section 1983 inquiry must "ask what process the State provided, and whether it was constitutionally adequate").

3. **The Equal Protection Theory**. The plaintiffs' final theory — which invokes the Equal Protection Clause — suffers a

similar fate. In effect, the plaintiffs claim that they were treated differently than other, similarly situated employees because the AESP compiled "suspicious" files about them and used those files in making employment decisions. The legal premise on which this claim rests is impeccable: under the Equal Protection Clause, similarly situated persons are entitled to receive similar treatment at the hands of government actors. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). The amended complaint, however, lacks a factual foundation adequate to bring this premise into play.

To plead a viable equal protection claim, a plaintiff must allege facts indicating selective treatment "compared with others similarly situated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (emphasis omitted). The amended complaint fails to satisfy this requirement.

Assuming for the sake of argument that the amended complaint sufficiently pleads that other non-surveilled employees constitute a similarly situated group — and that is by no means clear — it certainly fails adequately to allege the other prerequisites of a valid equal protection claim. Without a more specific account of the associations and expressions about which

-11-

information supposedly was gathered, no court conceivably could determine whether the plaintiffs received differential treatment based on either their membership in a sheltered class or their protected expressions. And even if the "suspicious" files did classify the plaintiffs on prohibited bases, the utter absence of any specific instances of discriminatory conduct sounds the death knell for this claim. Given the paucity of hard facts in the amended complaint, there is simply no way to ascertain whether intentional discrimination occurred or, if it did, whether there was any link between that conduct and the allegedly unconstitutional classification.

To sum up, notice pleading imposes minimal requirements on the pleader — but minimal requirements are not the same as no requirements at all. Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). The plaintiffs' pleading must "at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores, 367 F.3d at 68. As to the federal civil rights claims, the amended complaint fails to surpass even that relatively low bar.

4. **The Regulatory Claim**. The plaintiffs also advance an additional federal cause of action in the form of a regulatory claim under 5 C.F.R. § 293.302. That sortie need not detain us for long.

The regulation requires that an "agency" maintain only one official personnel folder for each employee. See 5 C.F.R. § 293.302. For purposes of this rule, the term "agency" is defined

-12-

as "each executive department and independent establishment of the Federal Government, each corporation wholly owned or controlled by the United States, and with respect to positions subject to civil service rules and regulations, the legislative and judicial branches of the Federal Government."  Id. § 293.301.

That definition does not fit this case: U.P.R. is an instrumentality of the Commonwealth of Puerto Rico, not a part of the federal government.  It is, therefore, not an agency within the ambit of the regulation. See id.  By the same token, the individual defendants, none of whom is alleged to be a federal civil servant, are beyond the regulation's reach. See id.  The regulation is, therefore, inapposite.

## B.  Leave to Amend.

The plaintiffs also challenge the lower court's denial of their request for leave to file a second amended complaint.  This challenge lacks merit.

By way of background, it is important to note that the plaintiffs amended their complaint once without incident.  In the absence of consent, their subsequent request to file a second amended complaint needed leave of court, which as a general proposition will be "freely given when justice so requires."  Fed. R. Civ. P. 15(a).

This does not mean, however, that a trial court must mindlessly grant every request for leave to amend.  When a proffered

-13-

amendment comes too late, would be an exercise in futility, or otherwise would serve no useful purpose, the district court need not allow it.  See Steir v. Girl Scouts, 383 F.3d 7, 12 (1st Cir. 2004); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990); Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517 (1st Cir. 1989).

We review the denial of a motion to amend for abuse of discretion and will defer to the district court's hands-on judgment so long as the record evinces an adequate reason for the denial. Grant v. News Group Boston, Inc., 55 F.3d 1, 5 (1st Cir. 1995).  We find an adequate basis for the district court's order in this case.

In their opposition to the defendants' dispositive motion, the plaintiffs made no attempt to supplement their bare request for leave to amend, nor did they preview what additional facts or legal claims might be included in a second amended complaint (should one be allowed).  The absence of supporting information may, in and of itself, be a sufficient reason for the denial of leave to amend. See Twohy v. First Nat'l Bank, 758 F.2d 1185, 1197 (7th Cir. 1985) (acknowledging "the normal procedure" for requesting leave to amend "is for the proposed amendment or new pleading to be submitted with the . . . motion"); see also 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.17 (3d ed. 2005).

Here, the court had an even sounder reason to deny the plaintiffs' request.  Over a year earlier, it had arranged for

-14-

access to the "suspicious" files and ordered the plaintiffs to inspect them and decide whether they wished to move forward with the case. The plaintiffs canvassed those files, presumably took note of their contents, decided to stay on the offensive, and composed an amended complaint. That pleading failed to state any viable federal cause of action. See supra Part III(A). Having afforded the plaintiffs an ample opportunity to put their best foot forward, the district court was not obliged to grant them yet another opportunity to state a claim. Plaintiffs must exercise due diligence in amending their complaints. As a corollary of that principle, busy trial courts, in the responsible exercise of their case management functions, may refuse to allow plaintiffs an endless number of trips to the well.

That ends this aspect of the matter. We conclude, without serious question, that the district court did not abuse its discretion in denying the plaintiffs' request for leave to file a second amended complaint.

## C. **Stay of Discovery**.

In a last-ditch effort to uncover error, the plaintiffs challenge the court-imposed stay of discovery. This challenge is impuissant. The plaintiffs' notice of appeal refers only to the district court's order of dismissal, entered February 14, 2005. It makes no mention of the separate order staying discovery, entered December 1, 2004.

-15-

That is game, set, and match. By rule, a notice of appeal must specify the particular order to which the appeal is addressed. See Fed. R. App. P. 3(c)(1)(B) (mandating that a notice of appeal "designate the judgment, order, or part thereof being appealed"). Failure to identify a given order undermines an appellant's ability to dispute that order in the court of appeals. See, e.g., Shelby v. Superformance Int'l, Inc., 435 F.3d 42, 45 (1st Cir. 2006); Kotler v. Am. Tobacco Co., 981 F.2d 7, 10-11 (1st Cir. 1992). The plaintiffs offer no persuasive reason why the denominate-or-waive rule should not be enforced in this instance.

We add, moreover, that even if this assignment of error were preserved, it would fail. The plaintiffs' attack focuses on the sequence of events, noting that the defendants filed their dispositive motion, then turned over the "suspicious" files, and within a matter of weeks thereafter moved to stay discovery. This chronology, however, is incomplete and tells only a part of the story.

For one thing, discovery in this case was not stayed until the defendants' dispositive motion had been fully briefed by all parties and taken under advisement by the district court. Thus, any matters disclosed by further discovery would have been irrelevant to the district court's ruling on the defendants' dispositive motion. Cf. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004) (noting that, in "ruling on whether a plaintiff has

-16-

stated an actionable claim," the district court's consideration is limited to "the complaint, documents annexed to it, and other materials fairly incorporated within it").

For another thing, before the staying of discovery, the plaintiffs had twice examined the "suspicious" files — once prior to composing the amended complaint and again before serving their opposition to the defendants' dispositive motion. The discovery rules are not intended as a broad license to mount serial fishing expeditions. Where, as here, a party has had an adequate opportunity to conduct discovery, it is well within the district court's province, at least in the absence of a showing of changed circumstances or particularized need, to stay further discovery pending the determination of a dispositive motion. See E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n., 357 F.3d 1, 9 (1st Cir. 2004); Corwin v. Marney, Orton Invs., 843 F.2d 194, 200 (5th Cir. 1988).

To say more on this point would be to paint the lily. Trial courts have broad discretion in shaping the parameters of pretrial discovery, and an appellate court should not interfere with the exercise of that discretion "unless it clearly appears that a discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 38 (1st Cir. 2000) (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989))

(internal quotation marks omitted).  No such extenuating circumstances are present here.

## IV.  CONCLUSION

We need go no further.[3]  For the reasons elucidated above, we reject the plaintiffs' appeal in all its permutations.  We add, however, that to the extent any local-law claims may be deemed to have been pleaded in the amended complaint, we understand them to have been dismissed without prejudice.  See Martinez v. Colon, 54 F.3d 980, 991 n.12 (1st Cir. 1995).

**Affirmed**.

---

[3]Like the district court, we have no occasion to reach the immunity issues raised in the defendants' dispositive motion.  Cf. Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 230 (1st Cir. 1992) ("Courts are without jurisdiction to address academic questions.").