Eugene MONGEAU, Plaintiff,

v.

CITY OF MARLBOROUGH, and Stephen Reid, individually and in his official capacities as Commissioner of Inspectional Services and as member of the City of Marlborough Site Plan Review Committee, Defendants.

Civil Action No. 06–10324–WGY.

United States District Court, D. Massachusetts.

Nov. 13, 2006.

**146**

Catherine J. Savoie, Posternak, Blankstein & LUND, Boston, MA, for Plaintiff.

Judy A. Levenson, Leonard H. Kesten, Brody, Hardoon, Perkins & Kesten, LLP, Boston, MA, for Defendants.

*MEMORANDUM*

YOUNG, District Judge.

This lawsuit emanates from a land developer's frustration with his inability to secure a permit to construct a building on a parcel. In 1991, the City of Marlborough ("Marlborough") announced its intention to condemn several parcels owned by Eugene Mongeau ("Mongeau"). Mongeau agreed to sell several parcels to Marlborough while retaining, among other properties, a landlocked parcel. In return, Marlborough granted Mongeau a right of way and permission to build on the property in compliance with the building code. Since 2003, Mongeau has sought a permit to build on the landlocked parcel, but his permit application has been denied, principally on the ground that the parcel lacks road frontage. After three years of frustration, Mongeau brought suit against Marlborough and Stephen Reid ("Reid"), Commissioner of Inspectional Services and member of the Site Plan Review Committee. Marlborough and Reid moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

## I. DISCUSSION

### A. Prior Proceedings

On December 22, 2005, Mongeau filed his Complaint [Doc. No. 5] in the Massachusetts Superior Court sitting in and for the County of Middlesex. The Complaint asserted six counts: (1) request for declaratory judgment declaring the rights and responsibilities of the parties pursuant to the purchase and sale agreement between the parties; (2) breach of contract; (3) request for injunctive relief ordering defendants to authorize issuance of building permit; (4) breach of covenant of good faith and fair dealing; (5) violation of 42 U.S.C. section 1983; and (6) violation of the Massachusetts Civil Rights Act, Massachusetts General Laws, chapter 12, sections 11H, 11I. On February 22, 2006, Marlborough and Reid removed this action to this Court [Doc. No. 1]. On April 24, 2006, the defendants filed their Answer [Doc. No. 7].

On August 14, 2006, the defendants filed a Motion for Judgment on the Pleadings [Doc. No. 15] ("Defs.' Mot."). On Septem-

ber 1, 2006, Mongeau filed his opposition to the motion [Doc. No. 19] ("Pl.'s Opp'n"). On September 13, 2006, the defendants filed their reply [Doc. No. 21]. On September 28, 2006, following a hearing, the Court dismissed Mongeau's section 1983 claim. The Court remanded Mongeau's remaining state law claims to the Massachusetts Superior Court [Doc. No. 22]. The Court here explains its reasoning.

## B. Alleged Facts

The facts below are taken from the Complaint and all reasonable inferences were drawn in the light most favorable to Mongeau for purposes of the motion.

### 1. The Purchase and Sale Agreement

In 1991, the Mayor of Marlborough approved an order of taking adopted by the City Council of Marlborough to commence eminent domain proceedings for the purpose of acquiring property on which to locate a fire station. Compl. ¶ 1. Three of the parcels taken were then owned by Mongeau. *Id.* ¶ 2. The land comprising the parcels was part of a larger tract of land owned by Mongeau, a portion of which was contaminated and determined by the Department of Environmental Protection ("DEP") to require clean up. *Id.* ¶ 4.

In conjunction with the taking, Mongeau and Marlborough entered into a purchase and sale agreement. *Id.* ¶ 7. Mongeau agreed to transfer the three clean parcels to Marlborough and keep the contaminated portions of the land. *Id.* Mongeau received $450,000 in consideration. *Id.* The parties further agreed that Mongeau "shall have the right to develop parcel 140 ... and erect a 60[ft.] by 80[ft.] building thereon, in full compliance with the building code and ordinance of the City of Marlborough." Compl. Ex. A. Since parcel 140 did not have road frontage, Marlborough agreed to provide a right of way. *Id.* ¶ 9, Ex. A. Finally, Mongeau agreed to release and discharge Marlborough from all claims and damages resulting from the taking. *Id.*

As contemplated and written, the contract gave Mongeau a zoning variance. *See Id.* at Ex. A. Although Mongeau agreed to develop the parcel in compliance with Marlborough's building codes and ordinances, the contract waived the requirement that Mongeau comply with the minimum road frontage requirement. *See id.* Under the agreement, the right of way that Marlborough provided Mongeau would provide sufficient access to the parcel. Mongeau agreed to comply with all other provisions of the building code. *Id.*

### 2. The Permitting Process

In reliance on the contract, Mongeau incurred $675,000 in cleaning up the contaminated parcel before he could develop the property. *Id.* ¶ 11. In late 2002 or early 2003, Mongeau submitted an application to Marlborough's Building Department for the construction of a 35 ft. by 40 ft. building. *Id.* ¶ 12.

On or around January 23, 2003, Reid, as Commissioner of Inspectional Services, rejected the application, citing the lack of proper frontage and access. *Id.* ¶ 13. That spring, Mongeau submitted a preliminary application for the construction of a 60 ft. by 110 ft. building on the site. *Id.* ¶ 14. On April 1, 2003, Reid rejected the application on the grounds of frontage and access, and also because the Site Plan Review Committee had not considered the plan. *Id.* ¶ 15, Ex. D.

Mongeau appealed to Marlborough's Zoning Board of Appeals and submitted a request for a variance from the frontage requirements. *Id.* ¶ 16. Reid urged the Zoning Board of Appeals to reject the

application on the ground that Mongeau had already been "fully compensated" for the taking. *Id.* ¶ 17, Ex. E. Reid also stated that he had no intention of ever issuing a building permit for the proposed structure because such a structure cannot be erected on the parcel. *See id.* at Ex. E.

On June 16, 2003, the Zoning Board of Appeals waived the minimum frontage requirement and granted Mongeau the right to construct a 60 ft. by 80 ft. structure on the parcel. *Id.* ¶ 18, Ex. F. As a condition, however, the Zoning Board of Appeals required Mongeau to go before the Site Plan Review Committee, of which Reid is a member, and the Conservation Committee. *Id.* at Ex. F. The site plan review process provided for no public hearing on an application and did not contain procedural safeguards to protect applicants from discriminatory practices on behalf of committee members. *Id.* ¶¶ 23–24.

Mongeau sought and received an extension of the variance up to and including December 15, 2004. *Id.* ¶ 26. Before that date, Mongeau submitted a site plan that addressed every issue that had been raised by the Department of Public Works, the building inspector, the planning director, and all other members of the site plan review committee. *Id.* ¶ 27. At that time, Reid informed Mongeau's representative that Mongeau should request another extension of the variance to enable Reid to consider the site plan and issue a building permit prior to the expiration of the variance. *Id.* ¶ 28. Mongeau applied for and received an extension of the variance. *Id.* ¶ 29. Reid immediately threatened to appeal the extension of the variance in order to coerce Mongeau into refraining from pursuing development of the property. *Id.* ¶ 30.

Mongeau finally obtained site plan approval and, on May 23, 2005, a site plan permit was issued for the property. *Id.*

¶ 32. Also on that date, Mongeau obtained an order of conditions from the Conservation Committee. *Id.* A citizen's group, however, then filed an appeal of the order of conditions in accordance with the Wetlands Protection Act. *Id.* ¶ 33. Reid helped orchestrate the citizen's appeal for the sole purpose of delaying construction until the variance expired, which it did on June 15, 2004 after Mongeau was unable to secure yet another extension. *See id.* ¶ 34.

On September 6, 2005, the DEP issued an order determining that the proposed project adequately protected the interests of the Wetlands Protection Act. *Id.* ¶ 35. Mongeau immediately applied for a building permit authorizing the construction of a 4800 square foot commercial building on the property. *Id.* ¶ 36. On October 19, 2005, Reid rejected the application on the conclusory ground that the property was "deficient in many ways" and because the variance had run. *Id.* ¶ 37, Ex. G.

Mongeau alleged in the Complaint that Reid blocked the property's development because Mongeau never offered to pay "mitigation." *Id.* ¶ 41. He argues that Reid's actions were consistent with Marlborough's practice of collecting "mitigation" payments as a condition of issuing authorizations for construction projects. *Id.*

**C. Standard for Analysis**

The standard for evaluating a motion for judgment on the pleadings under Fed. R.Civ.P. 12(c) is essentially the same as that for deciding a Rule 12(b)(6) motion. *Pasdon v. City of Peabody,* 417 F.3d 225, 226 (1st Cir.2005). Courts "view the facts contained in the pleadings in the light most flattering to the nonmovants ... and draw all reasonable inferences therefrom in their favor." *Aponte–Torres v. University of Puerto Rico,* 445 F.3d 50, 54 (1st Cir.2006). A court may enter judgment

"only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Id.* Courts may "draw upon documents annexed to the ... complaint or incorporated into it, as well as matters subject to judicial notice." *Id.* at 55. "[B]ald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" are not credited. *Id.* (citation omitted).

## D. Section 1983 Claim

There are two essential elements of a section 1983 claim: (1) the conduct complained of was carried out under color of state law; and (2) this conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Chiplin Enters., Inc. v. City of Lebanon,* 712 F.2d 1524, 1526–27 (1st Cir.1983) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

In the Complaint, Mongeau alleged only that Reid "caused Mongeau to be subjected to a deprivation of his rights secured by the [C]onstitution and laws of the United States." Compl. ¶ 49. Mongeau did not specify in the Complaint which of his rights were violated. Subsequently, however, Mongeau explicated the grounds for his section 1983 claim. Mongeau explained in his opposition to the motion for judgment on the pleadings that he was alleging "violations, *inter alia,* of his property rights and due process rights." Pl.'s Opp'n at 12. At the hearing, Mongeau further clarified that he was alleging violations of procedural due process and substantive due process. Tr. 4:4–5.[1]

### 1. Land–Use Disputes and Section 1983

The First Circuit has expressed deep reservations about section 1983 claims brought in cases involving land-use disputes. The First Circuit's concern is that without a high bar to such claims, federal courts would "sit as a 'zoning board of appeals' ... [involved] in political disputes better left to local governments." *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 46 (1st Cir.1992) (quoting *Village of Belle Terre v. Boraas,* 416 U.S. 1, 13, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting)). The court has observed:

> Every appeal by a disappointed developer from an adverse ruling by a local ... planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.

*Cloutier v. Town of Epping,* 714 F.2d 1184, 1189 (1st Cir.1983) (quoting *Creative Env'ts, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir.1982)). With these policy concerns in mind, the Court addresses, in turn, Mongeau's procedural due process and substantive due process claims.

### 2. Procedural Due Process

■ To establish a procedural due process claim under section 1983, a plaintiff

---

1. The Court notes that no party briefed the merits of the section 1983 claim. As the First Circuit has explained, courts cannot be expected to "do counsel's work, create the ossature for the argument, and put flesh on its bones." *Redondo–Borges v. United States Dep't of Housing and Urban Dev.,* 421 F.3d 1, 6 (1st Cir.2005) (quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990)). The Court nonetheless found guidance in the First Circuit's well-established precedent in section 1983 claims involving land-use disputes.

"must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process." *SFW Arecibo, Ltd. v. Rodriguez,* 415 F.3d 135, 139 (1st Cir.2005) (citation omitted).

■ In section 1983 claims brought in the context of land-use disputes, the First Circuit has invariably assumed *arguendo* that there was a property interest and examined whether there was sufficient *process* afforded the would-be property developers. *See, e.g., id.* This Court followed that approach and assumed for purposes of this motion that Mongeau had a property interest in order to reach the question whether there was adequate process.

■ The First Circuit has declared that "where ... the state offers a panoply of administrative and judicial remedies, litigants may not ordinarily obtain federal court review of local zoning and planning disputes by means of 42 U.S.C. § 1983." *Raskiewicz v. Town of New Boston,* 754 F.2d 38, 44 (1st Cir.1985); *see also Chongris v. Board of Appeals of the Town of Andover,* 811 F.2d 36, 41–42 (1st Cir.1987). Even a bad faith refusal to follow state law in local administrative matters does not amount to a deprivation of due process where the state courts are available to correct the error. *See Chiplin,* 712 F.2d at 1528.

■ The First Circuit has affirmed the adequacy of the post-deprivation remedies available under Massachusetts zoning law. In *Licari v. Ferruzzi,* 22 F.3d 344 (1st Cir.1994), the court stated that the devel-

oper had "the right to an administrative appeal of the building inspector's decision, which could have been heard by the zoning board of appeals or by the state Building Code Appeals Board, and a right to judicial review thereafter." *Id.* at 348 (citing 22 Mass. Regs.Code tit. 780, §§ 126.1, 126.6 and 126.7.1). The court also rejected the developer's argument that the remedies were insufficient because relief might be delayed. *Id.* (noting that the Appeals Board adheres to a timetable as required by 22 Mass. Regs.Code tit. 780, §§ 126.3.4, 126.4.3).

The First Circuit has further explained that "[f]ull judicial-type hearings are not required when local boards engage in the quasi-legislative task of granting or revoking zoning or similar types of permits." *Chongris,* 811 F.2d at 41 (quoting *Cloutier,* 714 F.2d at 1191) (alterations in original). The court explained that "[t]hese truths are especially self-evident where ... the state's courts were available to provide post-deprivation review." *Id.* (citing *Raskiewicz,* 754 F.2d at 44).

In the present case, Mongeau alleged that Reid forced him to seek relief from the Zoning Board of Appeals and undergo site plan approval for the building. Mongeau further alleges that Reid orchestrated an appeal of the Conservation Committee order. Taken together, these allegations suggest that Mongeau's complaint is that he never should have had to try to overcome any of the bureaucratic hurdles that were placed before him. State law, however, appears to provide for the administrative procedures in question.[2] Short of contending that the procedures required or permitted by state law are themselves unconstitutional, Mon-

---

2. For instance, a zoning board of appeals may grant a variance. Massachusetts General Laws, ch. 40A, § 14(3). Similarly, state law provides for a site plan review process. *Id.*

§ 9. In any event, Mongeau does not allege that these procedures were unauthorized under state law.

geau cannot prevail on the theory that his due process rights were violated because he had to go through an administrative process in an effort to seek a variance.

■ Mongeau also alleged that Reid had predetermined that the property could not be developed and did everything he could to block the project. Compl. ¶ 40. *Chiplin* makes clear, however, that even a bad faith refusal to follow state law in local administrative matters does not amount to a deprivation of due process when state courts are available to correct the error. 712 F.2d at 1528.

■ Mongeau further alleged that the site plan review process he had to undergo as a condition for receiving the variance was procedurally defective. Compl. ¶¶ 22–24. The site plan review process allegedly provided for no public hearing on a site plan review application. *Id.* ¶ 23. As described, however, the First Circuit has explained that full judicial-type hearings are not required when judicial review is available. *Chongris*, 811 F.2d at 41 (quotation omitted). That Mongeau filed suit in state court shows that procedures remain available under state law for him to vindicate any property interest that he may have. First Circuit precedent establishes the sufficiency of administrative and judicial review provided under Massachusetts law and Mongeau did not allege otherwise. *See Licari*, 22 F.3d at 347–48.

In short, Mongeau did not establish anything to show that his case was any different from the run-of-the-mill case where a frustrated developer brings suit under section 1983 to try to overcome the bureaucratic red tape that is perhaps inherent in land-use regulatory processes. Without anything to distinguish his case, Mongeau failed to state a procedural due process claim.

### 3. Substantive Due Process

The doctrine of substantive due process "prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." *SFW Arecibo*, 415 F.3d at 141 (quoting *PFZ Props. v. Rodriguez*, 928 F.2d 28, 31–32 (1st Cir. 1991)). Unlike with a procedural due process claim, there is no requirement that Mongeau establish that he has a property right. Rather, the focus is on the governmental action in and of itself. *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir.1990).

■ The First Circuit has explained that "[it] has repeatedly held ... that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state law officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation." *SFW Arecibo*, 415 F.3d at 141 (quoting *PFZ Props.*, 928 F.2d at 31).

■ The First Circuit "[has] left the door slightly ajar for federal relief in truly horrendous situations. But ... the threshold for establishing the requisite 'abuse of government power' is a high one indeed." *Nestor Colon Medina*, 964 F.2d at 45. An allegation of political interference with the permitting process alone does not give rise to a substantive due process claim. *Id.* at 46. Similarly unavailing are substantive due process claims based on an "erroneous decision in violation of state law." *SFW Arecibo*, 415 F.3d at 141.

The First Circuit has, however, not ruled out the possibility of a substantive due process claim based on personal hostil-

ity towards the applicant. *Nestor Colon Medina,* 964 F.2d at 47 & n. 6 (declining to take a position whether such allegations sufficed). The court has also left open the possibility of a substantive due process claim where bribery or political threats are involved. *Id.* at 47 ("Whether and in what circumstances such conduct might violate the due process clause is an issue we need not and do not consider."). Similarly, the First Circuit has declined to consider whether "sufficiently serious, supported, assertions" of conspiracy and corruption can make out a due process claim under section 1983. *Raskiewicz,* 754 F.2d at 44–45. Although the First Circuit has left the door slightly ajar, it has expressed doubt about even these kind of claims, since "[i]f all that were required to secure federal jurisdiction were loose claims of conspiracy and corruption, virtually any case of this type could be brought into the federal court." *Id.* at 44.

 Thus, even assuming that some or all of the procedures Reid employed violated state law, First Circuit precedent holds that in the context of land-use disputes, such conduct "do[es] not ordinarily rise to the level of a constitutional deprivation." *SFW Arecibo,* 415 F.3d at 141. Consequently, without more, Mongeau's allegations that Reid raised unlawful barriers to the development of the property fails to state a claim.

Mongeau did, however, make the additional allegation that Reid "made every effort" to prevent him from receiving a permit because Mongeau "never offered to pay 'mitigation' to the City of Marlborough in accordance with the unlawful practice of the City of Marlborough officials of collecting 'mitigation' payments as a condition of issuing approvals authorizing construction projects in the City." Compl. ¶ 41. If Reid refused to grant a permit because Mongeau did not make a "mitigation payment,"

then his conduct would appear to be "abuse of government power that shocks the conscience." *See SFW Arecibo,* 415 F.3d at 141.

Since Mongeau alleged that Reid was determined to block him because Mongeau never offered mitigation payments, Mongeau *may* have stated a claim under section 1983. This is not, however, the end of the substantive inquiry. Mongeau must also surmount the immunity defenses that Marlborough and Reid have asserted in this case.

### 4. Immunity Defenses

 As an initial matter, Marlborough and Reid contended that Mongeau was not sufficiently specific as to which of Reid's capacities he challenged. Defs.' Mot. at 12. The First Circuit, however, has adopted a "course of proceedings" test whereby the identification of the capacity in which a governmental actor is sued is not limited solely to the face of the complaint but may be determined from the course of the proceedings. *Powell v. Alexander,* 391 F.3d 1, 22 (1st Cir.2004). Since Mongeau's Complaint and Memorandum of Opposition can be read to allege suit against Reid in both his official and individual capacities, the following analysis proceeds with respect to both capacities.

### a. Reid's Personal Capacity

 Federal law governs immunity in actions based on federal law. Under the standard set out in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727. The Supreme Court has explained

that a right can be "clearly established" even in the absence of a Supreme Court opinion on point, but that a conflict in the lower courts might preclude such a determination. *See Wilson v. Layne*, 526 U.S. 603, 617–18, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *United States v. Lanier*, 520 U.S. 259, 269, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

■ In the immediate case, Mongeau may have a viable claim that his constitutional rights were violated. As discussed, the First Circuit has left the door slightly ajar in substantive due process claims in land-use actions involving allegations of corruption or bribery. Given that the First Circuit has explicitly refused to decide whether such an allegation *can* make out a section 1983 claim, such a right is not "clearly established." Consequently, as counterintuitive as it may seem, Reid is entitled to qualified immunity *even if* he required mitigation payments in order to grant a permit. This is the logical conclusion that must follow from *Harlow* and the First Circuit opinions discussing section 1983 in the context of land-use disputes. This qualified immunity follows in the wake of the First Circuit's express reluctance to recognize *any* type of section 1983 claim in this particular context.

#### b. Reid's Official Capacity

■ In an official capacity suit, the plaintiff "must look to the government entity itself" since that entity is the "real party in interest." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In *Graham*, the Supreme Court explained that there is no need to bring an official capacity suit against a municipal officer because a municipality may be sued directly. *Id.* at 167 n. 14, 105 S.Ct. 3099. Consequently, the theory of municipal liability is applicable

even though the section 1983 claim is nominally against Reid and not Marlborough.

Under the rule of *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality may be sued directly under section 1983 for damages or for declaratory or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." In the present case, Mongeau alleged in the Complaint that Marlborough has a custom of requiring mitigation payments before a permit can issue. Compl. ¶ 41.

■ There are two requirements for maintaining a section 1983 action grounded upon an unconstitutional municipal custom: (1) "the custom . . . . must be so well settled and widespread that the policymaking officials . . . can be said to have either actual or constructive knowledge of it yet did nothing to end the practice"; and (2) "the custom must have been the cause of and the moving force behind the deprivation of constitutional rights." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989).

■ With respect to the first prong, state law determines who is a policymaking official. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). In this case, Mongeau can recover under a theory of municipal liability only if he can establish that a policymaking official caused the deprivation of his rights or acquiesced in the longstanding practice or custom. *See id.* This inquiry is a fact-specific one, however, and the parties did not brief this issue. Presumably, Mongeau imagines that Reid is a policymaking official as either Commissioner of Inspectional Services or as member of the Site Plan Review Committee.

Even assuming that Reid is a policymaking official, Mongeau must further make out a custom that resulted in the deprivation of his rights. Under some circumstances, extortion can represent a "custom" within the meaning of *Monell* as construed by later cases. In *Roma Constr. Co. v. aRusso*, 96 F.3d 566 (1st Cir.1996), the First Circuit stated that, based on the facts in the case, municipal liability was possible if "extortion of outsiders, businessmen, or developers ... was 'the way things are done and have been done' in the Town." *Id.* at 576 (internal citation omitted). On its face, this appears to require an even more extraordinary showing of bribery than may suffice to make out a substantive due process claim. Mongeau would have to show not just that Reid refused to grant him a permit because he did not offer to pay mitigation but also that extortion is "the way things are done and have been done" in Marlborough.

### 5. Disposition of the Section 1983 Claim

■ For the reasons described, there is only one way that Mongeau can prevail on a section 1983 claim. Assuming that Reid is in fact a policymaking official, Mongeau *may* be able to reach Reid in his official capacity if extortion is the way business is done in Marlborough and Reid denied Mongeau's permit applications because Mongeau did not pay a bribe.

The allegation of bribery is a serious one, especially if proven true. Mongeau, however, alleged bribery almost as an afterthought in his Complaint and did not integrate the extortion allegation into his legal argument. At the hearing, the Court questioned Mongeau's attorney, Catherine Savoie, Esq., about this allegation:

> **The Court:** Given your responsibilities under Rule 11, I don't hear you saying that you're claiming that bribery is a way that Marlborough conducts business.
>
> **Ms. Savoie:** Well, your Honor, I think that that is—I would not use the word bribery, but I would say that as reported in the Marlborough newspaper and as discussed by the city council in open meetings, they're very concerned about their practice of mitigation packages. Put it that way. They have indicated and it's been reported in the newspapers that I've read that they believe that they've gotten advice that their practice of requiring or accepting mitigation packages is an unlawful practice and they want, and they recognize that they need to do something about it.
>
> Now, at the time of these events that recognition had not been made yet. But at the time of these events we intend to prove that there were typically mitigation packages offered and accepted. Now, I don't know that I want to say that that's bribery, your Honor.

Tr. 5:10–6:2.

The Court appreciated counsel's candor in declining explicitly to allege that bribery was the way business was done in Marlborough at the time of the alleged acts. In light of counsel's express reluctance to press the assertion of extortion when reminded of her Rule 11 obligations, this Court held that Mongeau did not make his allegation in the sufficiently serious and supported manner required to make out a section 1983 claim in the land-use dispute context, to the extent that such a claim is cognizable. *See Raskiewicz*, 754 F.2d at 44–45. Without more than loose allegations of bribery, Mongeau's section 1983 claim cannot stand.

## II. CONCLUSION

There is nothing in this record to "distinguish it sufficiently from the usual land

developer's claim under state law to warrant recognition of a federal constitutional question." *SFW Arecibo*, 415 F.3d at 137 (quoting *Creative Env'ts*, 680 F.2d at 833). Consequently, the Court dismissed the section 1983 claim and remanded the remaining state law claims to the Massachusetts Superior Court. Accordingly, the Motion for Judgment on the Pleadings [Docket No. 15] was ALLOWED in part and DENIED in part.