**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 15 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

WAYNE B. PETERSEN,

    Plaintiff-Appellant,

v.

D. FARNSWORTH, Deputy, Cache County
Sheriff's Department; M. MAYERS, Deputy,
Cache County Sheriff's Department; CACHE
COUNTY; VON B. WILLIAMSON; LYNN
NELSON,

    Defendants-Appellees.

No. 03-4032

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No.1:00-CV-126-DAK)

---

James L. Harris, Jr., (Brian M. Barnard with him on the briefs), Utah Legal Clinic, Salt
Lake City, Utah, for the plaintiff-appellant.

Frank D. Mylar, Mylar & Associates, P.C., Salt Lake City, Utah, for the defendants-
appellees.

---

Before **BRISCOE**, **O'BRIEN**, Circuit Judges, and **HEATON**, District Judge.[*]

---

    [*] The Honorable Joe Heaton, United States District Court for the Western District
of Oklahoma, sitting by designation.

**BRISCOE**, Circuit Judge.

_____

Plaintiff Wayne Petersen appeals the district court's grant of summary judgment in favor of defendants in his civil rights case brought pursuant to 42 U.S.C. § 1983. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

The essential facts of this case are not disputed. Petersen was served with a criminal summons issued by a judge of the District Court of Cache County, Utah. The summons directed Petersen to appear in court to answer a charge of criminal trespass, in violation of Utah Code Ann. § 76-6-206(2)(b), a crime Utah categorizes as an infraction. Under Utah law, "[a] person convicted of an infraction may not be imprisoned but may be subject to a fine, forfeiture, and disqualification, or any combination." Utah Code Ann. § 76-3-205.

The summons was issued pursuant to Utah Rule of Criminal Procedure 6, which provides that upon the filing of an indictment or information and a judicial determination "that there is probable cause to believe that an offense has been committed and that the accused has committed it, the magistrate shall cause to issue either a warrant for the arrest or a summons for the appearance of the accused." Utah R. Crim. P. 6(a). Further, Rule 6 provides it is appropriate to issue a summons "in lieu of a warrant of arrest" when it appears defendant will appear on a summons and does not pose a danger to the

community.  Utah R. Crim. P. 6(b).

In addition to ordering Petersen to appear in court, the summons provided:
"PRIOR TO APPEARING ON THE ABOVE DATE YOU MUST DO THE
FOLLOWING: Appear at the Cache County Jail . . . at least one day before your court
appearance for booking on the above offense, after which the jail personnel will
immediately release you."  Aplt. App. at 87.  Further, the summons provided: "If you fail
to obey this summons and order, the judge may issue a warrant for your arrest."  Id.  The
requirement that Petersen appear for booking is found in Utah Code of Judicial
Administration § 4-609, which applies "to all prosecutors, law enforcement personnel, jail
booking personnel, and trial courts."  Rule 4-609 provides that booking personnel shall
"complete the booking process, including fingerprinting and issuing an Offense Tracking
Number," and then shall "release the defendant without bail unless the defendant has
outstanding warrants."  § 4-609(3)(A) and (E).

The day after Petersen received the summons, he voluntarily appeared at the Cache
County Jail and presented the summons to Deputy D. Farnsworth.  Petersen was booked
according to standard procedures of the jail, which are employed regardless of whether a
defendant is being released or confined following booking.  At 9:52 a.m., Deputy M.
Mayers directed Petersen into the jail intake area where Mayers performed a pat-down
search of Petersen and ordered him to remove his shoes, belt, wallet, watch, keys, glasses,
pocket knife, and his outer shirt.  Petersen was then escorted to the booking area of the

3

jail and was photographed and fingerprinted. His belongings were inventoried. Another deputy performed a check for outstanding warrants. During part of the process, Petersen was locked in a holding cell by himself. At one point, he was handcuffed to a bar attached to the booking counter. He was never placed in the general jail population and did not come into contact with jail inmates. At 10:56 a.m., Farnsworth returned Petersen's belongings and told him he was released.

In his § 1983 action, Petersen alleged the booking process at the jail violated his Fourth Amendment right to be free from unreasonable searches and seizures. Petersen sought a declaratory judgment that the booking procedures at the jail are unconstitutional to the extent they are applied to defendants appearing on criminal summonses. He also sought compensatory damages and attorney fees and costs. Petersen asserted these claims also on behalf of a putative class. The district court concluded that defendants "arrested" Petersen by detaining him at the jail, that the arrest was authorized by the summons issued by the state district court, and that the procedures employed by defendants were reasonable in light of the public interests at stake. Aplt. App. at 508-16.[1] The district court also denied Petersen's motion for class certification. On appeal, Petersen asks us to

---

[1] The district court granted only partial summary judgment on the grounds that there was a factual dispute regarding whether Petersen was ordered to remove his pants. The court allowed this "claim" to go to a jury. After a two-day trial, the jury was asked to decide by a special verdict form whether Petersen had been ordered to remove his pants. The jury concluded such an order had not been given. Petersen raises no issue related to the trial or verdict on appeal.

conclude the district court erred in granting partial summary judgment, declare the booking procedures unconstitutional, and remand "for a determination of damages and other relief." Aplt. Br. at 29.

II.

"We review a district court's grant or denial of summary judgment de novo." See 19 Solid Waste Dept. Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In determining whether the evidence presents a genuine issue of material fact, we view it in the light most favorable to the party against whom summary judgment was entered." Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998) (en banc).

We conclude as an initial matter that defendants seized Petersen. "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 439 (1991). In this case, it is undisputed that Mayers escorted Petersen into a secure area, that Petersen was handcuffed to a bar attached to the booking counter, and that he

5

was placed in a holding cell. Defendants contend that Petersen consented to the detention and that he could have left the jail at any time if he had asked. However, defendants concede that no one has ever asked to leave the jail during the booking process.

Regardless of whether Petersen's seizure is labeled as an arrest, this case presents a significantly different scenario than a typical case involving the arrest of a suspect by an officer performing ordinary law enforcement duties. Petersen voluntarily surrendered. Defendants' interest in Petersen was based solely on the criminal summons and he was detained only long enough to complete the administrative booking process. Thus, it is not helpful to compare this case to cases that discuss the scope of police authority to make arrests based upon officers' personal observations.

For purposes of our Fourth Amendment analysis, the key questions are (1) whether there was judicial authorization for defendants, upon Petersen's voluntary appearance for booking, to detain Petersen until the booking process was completed; (2) if defendants had such judicial authorization to detain Petersen for booking, whether the manner in which they detained him was reasonable within the meaning of the Fourth Amendment; and (3) if defendants had judicial authorization to detain Petersen, whether the search conducted incident to the detention was reasonable within the meaning of the Fourth Amendment.

It is uncontested that the summons was issued after a judicial determination of probable cause to believe that Petersen had committed a crime. Under Utah Rule of

Criminal Procedure 6, a criminal summons, like an arrest warrant, may only issue upon a judicial determination that there is "probable cause to believe that an offense has been committed and that the accused has committed it." The requisite probable cause determination is the same regardless of whether an arrest warrant or a summons is issued. Further, reflecting Utah Code of Judicial Administration § 4-609, the summons required Petersen to appear for booking and stated that he would then be released. The directive that he be released after booking necessarily implies authority to detain or seize him for purposes of booking. Therefore, we conclude that defendants did not violate the Fourth Amendment by detaining Petersen for booking. However, that conclusion does not end our analysis.

"[I]ndividualized review" of a Fourth Amendment claim is appropriate "when a defendant makes a colorable argument that an arrest, with or without a warrant, was conducted in an extraordinary manner, unusually harmful to [his] privacy or even physical interests." Atwater v. City of Lago Vista, 532 U.S. 318, 352-53 (2001) (internal quotation omitted). Moreover, "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original). "Reasonableness, of course, depends on a balance between the public interests and the individual's right to personal security free from arbitrary interference by law

7

officers." Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) (internal quotation omitted).

Defendants contend that "[o]nce a defendant is admitted into the secure booking area, it is necessary to have the person restrained in a cell or by having one hand cuffed to the booking counter to protect the person being booked, to protect other persons in the booking area from being attacked by the person being booked, and to properly manage the booking area." Aplee Br. at 19-20. Petersen discounts these concerns by arguing he was cooperative, was charged with a minor non-violent offense, and posed little or no risk to others, and defendants could have avoided security concerns by conducting the booking procedures outside the secure area of the jail.

In Atwater, plaintiff claimed her Fourth Amendment right to be free from unreasonable seizures was violated when she was arrested for not wearing a seat belt and failing to fasten her children into seat belts (both non-jailable offenses), handcuffed, taken to a local police station, ordered to remove her jewelry and glasses and to empty her pockets, photographed, and placed in a cell alone for about an hour to await arraignment. After a lengthy discussion of police authority to make arrests for misdemeanors, the Supreme Court concluded police officers may constitutionally make arrests for minor offenses committed in their presence. Atwater, 532 U.S. at 354. More pertinent to this case, the Court also concluded that the booking procedures employed following the arrest, although "humiliating," were "not so extraordinary as to violate the Fourth Amendment."

8

Id. at 355. In Atwater, plaintiff was detained after booking pending arraignment, whereas here the summons provided that Petersen was to be released immediately after booking. Therefore, defendants here did not have the same security concerns that were present in Atwater.

Taking into account all of the circumstances, we conclude the restraints employed by defendants were justified by their concern for Petersen's safety and the safety of others during the booking process. There is undisputed evidence that police officers, other criminal defendants, and jail visitors pass through the booking area while defendants are being booked. Moreover, it is significant that the amount of force used to restrain Petersen was minimal, as was the duration of his detention. There is no evidence that defendants used an extraordinary amount of force in applying the handcuffs or in placing Petersen in the holding cell, and Petersen was only detained for approximately one hour.

Petersen contends that individuals being booked for non-violent and non-jailable offenses should be booked in the non-secure area of the jail. While this suggestion appears to present a practical means of avoiding most of the procedures Petersen finds objectionable, we are asked here only to determine the constitutional ramifications of the procedures employed and not whether we could devise better booking procedures. Further, it is undisputed that the staff, equipment, and computers necessary to conduct the booking process are located within the secure area of the jail. Moreover, Atwater establishes that defendants charged with non-violent and non-jailable crimes do not enjoy

9

a constitutional right to be free from all restraints.

As for the search of Petersen, the constitutional test is again *reasonableness*. The Supreme Court has stated the balancing test applicable to alleged unconstitutional searches:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Bell v. Wolfish, 441 U.S. 520, 559 (1979). Considering all of the circumstances, we conclude the search of Petersen was reasonable within the meaning of the Fourth Amendment. We note that the search involved in this case was similar to the search at issue in Atwater, which the Supreme Court concluded did not violate the Fourth Amendment. Atwater, 532 U.S. at 354-55. Further, in Illinois v. Lafayette, 462 U.S. 640 (1983), the Supreme Court held that police may search an arrestee and inventory his personal effects at the station house following an arrest, prior to confining him. In Lafayette, the Court identified three governmental interests that justified the search: (1) verifying the identity of the arrestee; (2) confiscating dangerous items for the protection of the arrestee and others; and (3) deterring the theft of articles taken from arrested persons and false claims of theft. Id. at 646. Although Lafayette involved an inventory search of a defendant who was to be confined pending arraignment, the governmental concerns here are very similar. In the present case, as in Lafayette, police had legitimate

10

interests in verifying Petersen's identity, ensuring that he did not bring any dangerous items into the jail, and making an inventory of the items taken from him during booking to deter theft of those items by jail personnel and to deter a false claim of theft. In light of these interests, we conclude the scope of the search was reasonable.

Of course, the limited scope of the search at issue in this case is important. Our conclusion might be different if Petersen had been subjected to a significantly more intrusive search. In Chapman v. Nichols, 989 F.2d 393, 399 (10th Cir. 1993), we concluded a sheriff department's blanket strip search policy was unconstitutional as applied to individuals arrested for driving under the influence. In contrast, Petersen was subjected to a pat-down search and asked to remove his personal effects and his outer shirt. He has not alleged that he was strip searched. Although he initially alleged he was ordered to remove his pants, a jury expressly found per a special verdict form that no such order was given and Petersen does not contest that verdict on appeal.

## III.

In summary, the summons issued by the state district court authorized defendants to seize Petersen for purposes of booking. The booking procedures employed were reasonable within the meaning of the Fourth Amendment. Because we conclude there was no constitutional violation, we need not consider whether Petersen can establish municipal liability or whether defendants are entitled to judicial or qualified immunity.

AFFIRMED.

11