**F I L E D**

**PUBLISH**

**July 12, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

No. 05-8097

JOHN F. LADEAUX,

      Defendant - Appellant.

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 04-CR-0062-WFD)**

---

Submitted on the briefs:[*]

David M. Gosar, Jackson, Wyoming, for Defendant - Appellant.

Matthew H. Mead, United States Attorney, L. Robert Murray, Assistant United States Attorney, Cheyenne, Wyoming, for Plaintiff - Appellee.

---

Before **HARTZ**, **EBEL** and **TYMKOVICH**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In this case, Defendant-Appellant John Ladeaux contends that two requests made of him during a traffic stop—to (1) exit the vehicle and (2) roll up the windows and open the vents—violated his Fourth Amendment rights such that the contraband discovered during the stop must be suppressed. Because the district court did not properly consider the effect of the second request[1] under the burden-shifting scheme set out in United States v. Nava-Ramirez, 210 F.3d 1128 (10th Cir. 2000), we remand this case for the district court to address that issue in the first instance.

## BACKGROUND

On February 14, 2002, Ladeaux and two companions, Shawn Richards and Jess Byerley, were traveling on Interstate 80 near Cheyenne, Wyoming in a vehicle driven by Byerley. Wyoming Highway Patrolman Benjamin Peech was positioned along the highway conducting stationary radar enforcement. Peech noticed that Byerley was not wearing a seatbelt. He also observed Byerely's vehicle quickly approach another vehicle that was traveling below the speed limit, close within twenty or twenty-five feet, follow it closely for some distance, and then move into the left lane (without using a turn signal) to pass. These events prompted Peech to pull Byerley's vehicle over. As he approached the vehicle, he

---

[1] We note that it is unclear whether this was actually an order requiring compliance or merely a voluntary request. See infra at 8-9. We will refer to this as a "request" throughout this opinion, but on remand the district court will have to decide whether it was a voluntary request or a mandatory demand and to whom the request/demand was directed.

noticed that Ladeaux—the back-seat passenger—was attempting to fasten his seatbelt. Peech informed Byerley that he had stopped him for following too close and failing to signal; Peech also cited Byerely and Ladeaux for not wearing a seatbelt. At Peech's request, Byerley accompanied him back to the patrol car so that Peech could issue the citations.

During their conversation in the patrol car, Peech noticed that Byerley seemed "very, very nervous." Peech requested a second trooper, David Chatfield, to respond with a drug sniffing dog. Peech acknowledged that he did not have any reasonable suspicion that narcotics were in the vehicle, but rather that he merely had a "hunch" which prompted him to call in Chatfield.

Chatfield responded quickly, while Peech was still writing the citations. Chatfield ordered Richards and Ladeaux to step out of the vehicle; he also requested that the windows be rolled up and the vents turned on.[2] The dog alerted to the trunk of the vehicle; a search of the trunk and the luggage therein revealed fifteen pounds of marijuana and 1.2 pounds of cocaine. Ladeaux later admitted to his role in the possession of the controlled substances and was indicted on federal drug charges.

---

[2] Chatfield testified that rolling up the window and turning on the vents both keeps the dog from jumping through the window and forces the air out of the car to make it easier for the dog to sniff.

Ladeaux filed a motion to suppress all evidence obtained during the traffic stop, which was denied. Ladeaux then entered a conditional guilty plea, preserving his right to appeal the denial.

**DISCUSSION**

In reviewing the denial of a motion to suppress, we "view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." United States v. Apperson, 441 F.3d 1162, 1184 (10th Cir. 2006) (quotation omitted).

On appeal, Ladeaux does not challenge the validity of the initial stop or the length of the detention. Rather, he argues only that Chatfield exceeded the permissible scope of the stop when he ordered Ladeaux out of the vehicle and requested the windows be rolled up and the vents turned on. We address these issues in turn.

**I.**

Ladeaux argues that the order to exit the vehicle was unconstitutional because there existed no reasonable suspicion or probable cause to believe that the vehicle contained drugs when the order was given. However, in Maryland v. Wilson, 519 U.S. 408 (1997), the Supreme Court established a bright-line rule that, during a lawful traffic stop, officers may order passengers out of the car as a matter of officer safety. Id. at 415. See also United States v. Holt, 264 F.3d

1215, 1222 (10th Cir. 2001) (en banc) ("An officer . . . may order the driver and passengers out of the vehicle in the interest of officer safety, even in the absence of any particularized suspicion of personal danger."). As Ladeaux does not challenge the stop itself, his argument that being ordered out of the car was unlawful must fail. The district court therefore properly rejected this argument in ruling on Ladeaux's motion to suppress.

## II.

Ladeaux also argues that the request to close the windows and open the vents impermissibly expanded the scope of the detention, as Chatfield had no reasonable suspicion or probable cause sufficient to justify the request. The district court considered this and the order to exit the vehicle as one, ruling that "the order from Trooper Chatfield to roll up the windows and get out of the vehicle" was permissible under Wilson. However, Wilson deals only with ordering occupants out of the vehicle; it does not specifically address other, ancillary requests. See 519 U.S. at 415. We therefore remand for the district court to consider in the first instance whether the evidence obtained during the stop ought to be suppressed based on the request to close the windows and open the vents. See, e.g., United States v. Foote, 413 F.3d 1240, 1251-52 (10th Cir.

2005) (remanding for the district court to consider, in the first instance, issues that the district court had not adequately addressed).[3]

On remand, the district court should follow the burden-shifting scheme set forth in United States v. Nava-Ramirez, 210 F.3d 1128 (10th Cir. 2000). Nava-Ramirez involved a defendant who was a non-owner passenger in a vehicle that was stopped and searched. Id. at 1130. The question presented in Nava-Ramirez was what showing such a passenger had to make in order to seek suppression of evidence obtained during the search which, according to the defendant, occurred while the defendant was being unconstitutionally detained. Id. at 1130-31. We recognized that "although a defendant may lack the requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle, the defendant may nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the illegal detention." Id. at 1131. However,

> [t]o successfully suppress evidence as the fruit of an unlawful detention, a defendant must first establish that the detention did violate his Fourth Amendment rights. The defendant then bears the burden of

---

[3] The Government argues that Illinois v. Caballes, 543 U.S. 405 (2005), compels this court to find that no Fourth Amendment violation occurred. In Caballes, the Supreme Court held that the use of a dog-sniff during a lawful traffic stop is not unconstitutional where the sniff does not extend the length of the detention. Id. at 408-09. The salient difference between Caballes and this case, however, is that there was no order in Caballes comparable to Chatfield's request directed at the occupants of the vehicle in this case. Ladeaux objects not to the dog-sniff, but rather to the request; Caballes simply does not reach this question.

demonstrating a factual nexus between the illegality and the challenged evidence. Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not "fruit of the poisonous tree," either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct.

Id. (citations, quotations omitted). In order for a defendant to meet his burden of showing a "factual nexus," he must, "[a]t a minimum . . . adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light *but for* the government's unconstitutional conduct [directed toward that complaining defendant]." Id. (emphasis added). In other words, "[i]n order to meet his initial burden under Nava-Ramirez and demonstrate the required factual nexus, [a defendant] must show that the [contraband] would never have been found but for his, and only his, unlawful detention." United States v. DeLuca, 269 F.3d 1128, 1133 (10th Cir. 2001).[4]

_____

[4] We recognize that this requirement has been criticized as forcing the defendant essentially to disprove that the evidence would have been inevitably discovered, contrary to the general rule that the government bears the burden of proving that unconstitutionally obtained evidence is nonetheless admissible under the inevitable discovery doctrine. See DeLuca, 269 F.3d at 1145 n.1 (Seymour, J., dissenting); see also Nix v. Williams, 467 U.S. 431, 444 (1984) (placing the burden on the government to prove inevitable discovery); United States v. Eylicio-Montoya, 70 F.3d 1158, 1165 (10th Cir. 1995) (same). Further, we acknowledge that at least one prominent Fourth Amendment treatise has criticized Nava-Ramirez generally as "undermin[ing] the rationale for the exclusionary rule" and encouraging "flagrantly illegal" violations of passengers' Fourth Amendment rights during traffic stops. Wayne R. LaFave, Search and Seizure § 11.4(d) (4th ed. 2004) (quotation omitted). However meritorious these criticisms may be, "we are bound by the precedent of prior panels absent en banc

(continued...)

Thus, on remand, the district court must initially determine whether there was a violation of Ladeux's Fourth Amendment rights. On the record before us, we note at least two critical issues in need of elucidation. First, it is unclear whether Chatfield directed his request at Ladeaux or only at the front seat passenger, Richards.[5] If the request was made only of Richards, Ladeaux cannot complain of any unconstitutionality regarding that request, as a person has standing only to challenge the violation of his own Fourth Amendment rights. See Nava-Ramirez, 210 F.3d at 1131; see also DeLuca, 269 F.3d at 1131 ("Fourth Amendment rights are personal.").

Second, the character of Chatfield's request is unclear. A Fourth Amendment "seizure" occurs only when "'the police conduct would have communicated to a reasonable person that the person was not free to decline the

---

[4](...continued)
reconsideration or a superseding contrary decision by the Supreme Court." Fogle v. Pierson, 435 F.3d 1252, 1262 n.6 (10th Cir. 2006) (alteration omitted).

We would also point out that, in car search cases, the "factual nexus" requirement is only difficult to meet when the complaining party lacks the requisite interest in the vehicle to challenge the search directly. When the illegal conduct objected to is the search itself, the evidence discovered during that search *ipso facto* bears a nexus to the illegality. The nexus requirement of Nava-Ramirez thus only becomes cumbersome for a defendant in cases like the present, where the illegality complained of is not a search (to which the defendant lacks standing to object) but an illegal detention of that non-owner defendant.

[5] The district court did not make a specific finding concerning who Chatfield asked, and Chatfield's testimony at the suppression hearing is inconsistent—he stated both that he "asked the front seat passenger [Richards] if he would roll up the windows and turn on the vents" and that he asked "them" to open the vents and roll up the windows.

officers' requests.'" Petersen v. Farnsworth, 371 F.3d 1219, 1222 (10th Cir. 2004) (quoting Florida v. Bostick, 501 U.S. 429, 439 (1991)). Thus the district court must consider whether the request required compliance or merely solicited cooperation. If Chatfield requested the windows be closed and the vents opened in such a way that an objective person would have felt "free to decline the officers' request"—even in the absence of reasonable suspicion that the vehicle contained narcotics—we doubt that the Fourth Amendment would be implicated at all.[6] Cf. Muehler v. Mena, 544 U.S. 93, 100-01 (2005) (holding that questioning a lawfully detained person on issues unrelated to the detention without independent reasonable suspicion to support the questions did not run afoul of the Fourth Amendment because the questioning was not a "discrete Fourth Amendment event"). But cf. United States v. Sanchez, 89 F.3d 715, 718 (10th Cir. 1996) (noting that a request to accompany an officer to the station could suggest to a reasonable person that he is not free to disregard the officer).[7]

---

[6] The district court considered Chatfield to have "ordered" the windows closed and the vents opened, but Chatfield's testimony at the suppression hearing suggests only a voluntary request. Of course, whether it was termed an "order" or a "voluntary request" is merely semantic—the true inquiry is whether the request communicated that compliance was necessary.

[7] Of course, a request that extended the *length* of the detention would still amount to a Fourth Amendment violation. See Muehler, 544 U.S. at 101 ("[A] lawful seizure can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."); Holt, 264 F.3d at 1230 ("[T]he Fourth Amendment reasonableness of a traffic stop based on probable cause must be judged by examining *both* the length of the detention and the manner in which it

(continued...)

If the district court determines that Ladeaux's Fourth Amendment rights were in fact violated, the court must then consider whether Ladeaux has met his burden of showing a factual nexus between his unconstitutional seizure and the discovery of the evidence; that is, whether he has adduced evidence to show that, but for his illegal detention, the contraband would not have come to light. Assuming Ladeaux sustains both of these burdens, the Government must then be afforded the opportunity to prove that the contraband discovered was not "fruit of the poisonous tree."

**CONCLUSION**

For the foregoing reasons, we AFFIRM in part and REVERSE in part the district court's denial of Ladeaux's motion to suppress and REMAND this case to the district court for consideration of whether the evidence obtained during the stop ought to be suppressed based on the request to close the windows and open the vents.

---

[7](...continued)
is carried out.") (emphasis added). However, as noted above, Ladeaux does not challenge the detention's length.