Christopher DeMAYO, pro se, Plaintiff,

v.

**Robert NUGENT and Jeffrey Lugas, Defendants.**

Civil Action No. 06–11510–WGY.

United States District Court,
D. Massachusetts.

Feb. 21, 2007.

Eugenia M. Carris, Barbara Healy Smith, United States Attorney's Office, Teresa J. Walsh, Office of the Attorney General, Boston, MA, Joseph P. Kittredge, Rafanelli & Kittredge, P.C., Acton, MA, Brian J. Rogal, Law Offices of Brian Rogal, Needham, MA, for Defendants.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

This case presents the issue of whether two state police officers, acting under the color of federal law, ought be held individually liable for an alleged violation of the Fourth Amendment when they conducted a warrantless protective sweep of the plaintiff's house during a controlled delivery. The issue raises difficult and antipodal questions of the constitutional protection of the home and the safety of law enforcement officers acting in the good faith prosecution of their duties. The gravity of the issue weighed in favor of taking the matter under advisement.

Upon review of and reflection on this sparse record, however, any equiproportional tension is absent on the facts presented to the Court. Balancing the constitutional protections at stake here against the empty justification provided is like comparing "Hyperion to a satyr." Nevertheless, judgment must enter for the defendants. Here's why:

## I. BACKGROUND

### A. Procedural Posture

This case comes before the Court after significant procedural traffic. The plaintiff Christopher DeMayo ("DeMayo") initiated this action *pro se* in Massachusetts Superior Court sitting in and for the County of Middlesex on May 5, 2006, asserting violations of the federal and state constitutions, state statutory law, and state common law. Def. Notice of Removal [Doc. No. 1], Ex. 1 at 1 ("Compl."). The original defendants included state police officers Robert Nugent ("Nugent") and Jeffrey Lugas ("Lugas"), the Massachusetts State Police, and federal Drug Enforcement Agency agent Michael McCormick ("McCormick"). *Id.*

On August 25, 2006, McCormick removed the state lawsuit to this federal district court pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2679, that provided this Court with jurisdiction under the general removal statute, 28 U.S.C. § 1441(b). *Id.* at 1–2. In addition, the United States substituted itself for McCormick in his individual capacity for any tortious activity, though not for constitutional violations, pursuant to 28 U.S.C. § 2679(d)(1). Notice of Substitution [Doc. No. 2]. Three days later, Nugent and Lugas (collectively "the defendants") answered the complaint and raised twelve affirmative defenses, including qualified immunity. Defs. Answer [Doc. No. 4] ("Answer") at 7–8.

On September 7, 2006, the Massachusetts State Police entered a motion to remand the state statutory claim to state court. Def. Mot. to Remand [Doc. No. 5]. This Court allowed the remand of that

claim after DeMayo failed to oppose the motion. This Court entered a second order of remand [Doc. No. 13] on November 15, 2006—effectively remanding all remaining state law claims. In addition, on November 2, 2006, the United States and McCormick filed a motion to dismiss [Doc. No. 11], which this Court allowed by electronic order. Thus, as a result of this procedural activity, there remains before this Court only the alleged violation of DeMayo's Fourth Amendment rights under the United States Constitution asserted against Nugent and Lugas.

On November 17, 2006, DeMayo filed a motion for partial judgment on the pleadings as to liability. Pl. Mot. for Partial Summary Judgment [Doc. No. 15]. DeMayo argued in his memorandum in support of this motion that the Court could, based solely on the pleadings and the admissions made by Nugent and Lugas in public records, hold them liable for their warrantless entry into his home. Pl. Mem. in Support of Mot. for Partial Judgment on the Pleadings [Doc. No. 16] ("Pl.Mem.") at 1. Nugent and Lugas opposed the motion by arguing three points: that the evidence proved no liability; that the pre-discovery evidence was insufficient to determine liability; and, even if the evidence was sufficient, qualified immunity bars any liability. Defs. Mem. in Opp'n to Motion for Partial Judgment on the Pleadings [Doc. No. 18] ("Defs.Mem.") at 1, 3–4, 9–10. This Court held oral argument on the motion on December 20, 2006 and took the matter under advisement. At the motion session, defense counsel was invited to supplement the opposition brief with any further factual support. To this date, neither Nugent nor Lugas have done so. It is this motion that the Court addresses today.

### B. Uncontested and Properly Considered Facts

The facts germane to the issue before the Court are few, straightforward, and derived completely from public records that would be admissible under Federal Rule of Evidence 803(8).

On the morning of Thursday, May 6, 2004, members of the federal Drug Enforcement Administration ("DEA") Task Force at Logan Airport ("Task Force") received information from the Massachusetts State Police about a suspicious package held by the United Parcel Service ("UPS"). Pl. Mem., Ex. A ("Affidavit") at 1. Nugent, a Massachusetts state police officer assigned to the federal Task Force, along with other members of the Task Force responded to the information and immediately went to the UPS facility. *Id.*

The suspicious package was a brown cardboard box addressed to "Debbie Moore C/O Chris Demayo" and listed DeMayo's address, as well as the name and California address of the sender. *Id.* at 2; Compl., Ex. D ("DEA Report") at 1, 6. The package was sent "UPS Next Day Air" and was scheduled for delivery the previous day, May 5, 2004. DEA Report at 1. The cardboard box contained excessive tape and a "no signature required" notation. *Id.* In addition, the state of the sender, California, is considered a narcotics source state. Affidavit at 2. Finally, a K–9 drug sniffing dog arrived and alerted to the package. DEA Report at 1–2.

Based on these indicators, a DEA agent, acting undercover as a UPS employee, called the sender and informed her of a "mix up" and presented her with the option to have someone pick up the package or to have UPS deliver it. Affidavit at 2. The sender stated, "I called several times about this package, it is a very important package," and, "[l]et me tell you, the package is for my sister who has terminal cancer and she will not be coming out anywhere to pick up the package." *Id.* at 3. The DEA agents decided to conduct a controlled delivery. *See* DEA Report at 2.

The controlled delivery occurred on the same day at approximately 11:00 A.M. *Id.* at 2; Affidavit at 3. A DEA agent, acting undercover as a UPS employee, rang the doorbell at DeMayo's house. DEA Report at 2; Affidavit at 3. A white male appeared and identified himself as Gary DeMayo, the father of the intended recipient of the package. DEA Report at 2–3; Affidavit at 3. The agent informed him that no signature was required but asked him to sign a signature sheet anyway. DEA Report at 2; Affidavit at 3. DeMayo's father agreed and began to comply. DEA Report at 2–3; Affidavit at 3. While DeMayo's father was signing his name, the DEA agent gave a pre-arranged signal for the arrest team to approach. DEA Report at 3; Affidavit at 3.

The events that followed are quoted directly from the DEA Report on the incident:

> Gary DEMAYO was standing in the threshold of the house holding the front door open when members of the team approached with their badges displayed. TFOs Nugent and Lugas arrived to Gary DEMAYO first and passed by him in the open doorway of the residence and conducted a brief protective sweep of the house lasting approximately fifteen to twenty seconds. During the protective sweep, TFO Lugas encountered a frail looking woman exiting a bathroom on the second floor of the house. (Note: The woman was later identified to be Debbie MOORE, a listed recipient on the suspect parcel). TFO Lugas identified himself as a police officer, related that the officers were conducting a criminal investigation and then

returned to the front of the house where the officers were interviewing Gary DE-MAYO.

DEA Report at 3.

Prior to executing the controlled delivery, the officers involved did not seek or obtain a search warrant for the suspect package,[1] a search warrant for the premises, or an arrest warrant for anyone living at the premises. Compl. ¶¶ 19–21; Answer ¶¶ 19–21.

## II. DISCUSSION

### A. Standard of Review

The standard for evaluating a judgment on the pleadings motion under Federal Rule of Civil Procedure 12(c) is essentially the same as that for deciding a Rule 12(b)(6) motion to dismiss. *Pasdon v. City of Peabody,* 417 F.3d 225, 226 (1st Cir. 2005). Courts "view the facts contained in the pleadings in the light most flattering to the nonmovants ... and draw all reasonable inferences therefrom in their favor." *Aponte–Torres v. University of Puerto Rico,* 445 F.3d 50, 54 (1st Cir.2006) (citation omitted). A court may enter judgment "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Id.* Courts may "draw upon documents annexed to the ... complaint or incorporated into it, as well as matters subject to judicial notice." *Id.; R.G. Financial Corp. v. Vergara–Nunez,* 446 F.3d 178, 182 (1st Cir.2006). "[B]ald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" are not credited. *Aponte–Torres,* 445 F.3d at 54 (citation omitted).

---

1. After these events occurred, though, Officer Nugent tried to secure a search warrant for the suspect package. DEA Report at 5.

## B. Merits of the Fourth Amendment Claim

DeMayo asserts that the protective sweep conducted by Nugent and Lugas violated his rights under the Fourth Amendment of the United States Constitution. Compl. §§ 52–57. DeMayo pursues this claim as a federal cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■■■ To sustain a *Bivens* claim, DeMayo must show that a federal agent, acting under color of federal law, committed a constitutional violation. *Bivens,* 403 U.S. at 389, 91 S.Ct. 1999; *Lacedra v. Donald W. Wyatt Detention Facility,* 334 F.Supp.2d 114, 140 (D.R.I.2004). No issue exists as to whether Nugent and Lugas satisfy the first two elements of the claim. The United States government stipulates that both Nugent and Lugas were, on the day in the question, deputized as federal officers acting as Task Force officers under the U.S. Department of Justice, DEA. Second Notice of Substitution [Doc. No. 9] at ¶ 1. The stipulation that Nugent and Lugas were so deputized is supported and confirmed by the DEA Report that lists each of their titles as "TFO" for "Task Force Officer." *See* DEA Report at 1. State police officers deputized as federal agents under the DEA constitute federal agents acting under federal law. *See Majors v. City of Clarksville,* No. 03–5386, 2004 WL 2317527, at *1 (6th Cir. Sept. 22, 2004); *Tyson v. Willauer,* 289 F.Supp.2d 190, 192 n. 1 (D.Conn.2003).

DeMayo's *Bivens* claim thus turns on whether the protective sweep conducted by Nugent and Lugas violated his constitutional rights under the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The protection of privacy in one's home or residence stands at the core of this constitutional prohibition against federal action. *United States v. United States Dist. Court for E. Dist. of Mich., S. Div.,* 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (noting that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."); *Silverman v. United States,* 365 U.S. 505, 511–12, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). As a result, a warrantless search of one's home is presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *see also Kyllo v. United States,* 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). Such a warrantless entry into one's home will pass constitutional muster only if the government can prove that it satisfies an exception to this general rule. *See United States v. Wilson,* 36 F.3d 205, 208 (1st Cir.1994).

■■■ Here, there is no dispute that Nugent and Lugas entered DeMayo's home, and that they did so without either a search warrant or an arrest warrant. Compl. ¶¶ 19–21; Answer ¶¶ 19–21; DEA Report at 3. The only remaining issue before the general presumption of unconstitutionality attaches is the preceding and threshold question of whether their action constituted a constitutionally protected "search." *See Kyllo,* 533 U.S. at 31, 121 S.Ct. 2038. Police action will constitute a search if it invades a subjective expectation of privacy that society objectively recognizes as reasonable. *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

■■■ In this case, Nugent and Lugas entered DeMayo's home, which precludes any argument that their actions failed to

invade a constitutionally protected area. *See Maryland v. Buie,* 494 U.S. 325, 331, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (holding that searches of one's home are generally unreasonable). Nugent and Lugas argue, however, in an oblique way that their actions constituted a "protective sweep" and not a "search," thereby failing to implicate Fourth Amendment protections. *See* Defs. Mem. at 5 ("There is no contention that [Nugent and Lugas] conducted any search. . . .").

The Supreme Court has defined a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Buie,* 494 U.S. at 327, 110 S.Ct. 1093. While the Supreme Court and the First Circuit have justified these brief intrusions as "reasonable" in various situations and contexts, they are still considered "searches" subject to constitutional requirements. *See id.* at 332–33, 110 S.Ct. 1093 (applying the reasonableness balancing test of the Fourth Amendment to a protective sweep); *United States v. Jimenez,* 419 F.3d 34, 41 (1st Cir.2005) (same). As a result, a protective sweep, though only a brief intrusion, must still comport with the Fourth Amendment.

Nugent's and Lugas's focus on a distinction between a "protective sweep" and a "search" is misguided both with respect to their oblique argument that no constitutionally protected search occurred and in their reliance on case law upholding the constitutionality of protective sweeps. *See* Defs. Mem. at 5–6. Each of the cases so cited (upholding the use of protective sweeps) did so only by first finding the antecedent search or seizure constitutional. *United States v. Winston,* 444 F.3d 115,

119 (1st Cir.2006) (upholding a protective sweep of a home when incident to an arrest); *Jimenez,* 419 F.3d at 41 (holding the initial entry into the home lawful based on a consent theory and, notably, not reaching the issue of the reasonableness of the protective sweep); *United States v. Martins,* 413 F.3d 139, 148 (1st Cir.2005) (upholding a protective sweep when exigent circumstances justified the initial entry into the apartment); *United States v. Lawlor,* 406 F.3d 37, 41–42 (1st Cir.2005) (upholding a protective sweep of a home when incident to an arrest); *United States v. Daoust,* 916 F.2d 757, 758 (1st Cir.1990) (upholding a protective sweep when executing a lawful search warrant). The courts then adjudged the reasonableness of the protective search as an incident to that lawful search or seizure.[2] *See, e.g., Winston,* 444 F.3d at 118–19.

█ As a result, the focus in this case is not on the protective sweep itself, or the line of cases addressing protective sweeps, but whether the initial entry into the house was constitutional. As stated above, the warrantless entry by the defendants into DeMayo's home to conduct a protective sweep is unreasonable and a violation of the Fourth Amendment unless an exception to the general rule applies. *See Buie,* 494 U.S. at 329, 110 S.Ct. 1093. Here, the warrantless entry into DeMayo's home may be upheld as constitutional only if: (1) probable cause existed to believe that contraband or evidence would be found inside; AND (2) exigent circumstances justified an exception to the warrant requirement. *Kirk v. Louisiana,* 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) ("As *Payton [v. New York,* 445 U.S. 573, 586,

---

**2.** It would only be at this stage, the stage where the Court considered the reasonableness of the protective sweep, that the defendants' argument that the entire "sweep" took "no . . . more than fifteen or twenty seconds"

would be germane. *See* Defs. Mem. at 5. Since the Court rules the initial entry unlawful, this alleged fact is of no moment and of no persuasion.

100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ] makes plain, police officers need either a warrant or probable cause plus exigent circumstances."); *United States v. Wilson,* 36 F.3d 205, 208 (1st Cir.1994). *But see United States v. Wihbey,* 75 F.3d 761, 766 (1st Cir.1996) (focusing exclusively on the presence of exigent circumstances).

 Probable cause exists when "given all the circumstances, there is a fair probability that contraband or evidence will be found in the place described." *United States v. White,* 766 F.2d 22, 25 (1st Cir.1985). It cannot be based upon "conclusory statements, or mere 'suspicion, rumor, or strong reason to suspect [wrongdoing].'" *United States v. Samboy,* 433 F.3d 154, 159 (1st Cir.2005) (quoting *United States v. Han,* 74 F.3d 537, 541 (4th Cir.1996)). It may, however, be found from a reliance on the totality of the circumstances, *see United States v. Dickey–Bey,* 393 F.3d 449, 454 (4th Cir.2004), that presents " 'a practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act,'" *Maryland v. Pringle,* 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

The probable cause determination in this case must distinguish between probable cause to search the suspect package and probable cause to search the home. The box was detained as suspicious due to the totality of its excessive tape, "no signature required" notation, and source state. DEA Report at 1; Affidavit at 2. These factors in combination with the drug dog alert make it likely that probable cause existed that the package contained narcotics. *See Illinois v. Caballes,* 543 U.S. 405,

409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (holding a canine sniff sufficiently reliable to constitute probable cause of contraband).

This case requires, however, a determination not as to whether probable cause existed to search the package, but whether probable cause existed to enter DeMayo's home. The key facts for both the probable cause determination, and later for an analysis for exigent circumstances, center on timing. It cannot be disputed from the DEA Report that the entry into DeMayo's home occurred almost immediately after DeMayo's father opened the door.[3] *See* DEA Report at 2–3. Nugent's Affidavit in support of of a post-event search warrant for the package states: "[DeMayo's father] only signed his first name by the time the remainder of the team advanced to his location." Affidavit at 3. Before the arrest team advanced, DeMayo's father was cooperating with the agent undercover as the UPS employee. *See* DEA Report at 2. In addition, the DEA Report does not contain any facts that would suggest that DeMayo's home contained contraband other than the address on the suspicious package. *See id.* at 1–6. Thus, as a result of the immediate nature of the search by Nugent and Lugas and the lack of other factual support, probable cause must be found based on the attempted controlled delivery itself.

In analyzing this point, the Court assumes that a controlled delivery, based upon probable cause that the package contained contraband, occurred. The record is not clear whether this was in fact the case. The person who signed for the package was not listed as a named recipient. The DEA Report contradicts the Affidavit on the point of whether DeMayo's father

---

**3.** This fact forecloses the defendants' argument that the Court ought consider the interaction between DeMayo's father and the police officers when determining probable cause and exigency. Defs. Mem. at 5.

finished signing his name, and there is no clear support for whether DeMayo's father took actual control over the package. In the present procedural posture, however, all factual disputes must be weighed in the defendants' favor and the completion of the delivery must be assumed. *Aponte–Torres,* 445 F.3d at 54.

Though the factual support for probable cause is weak, the First Circuit provides a liberal standard for finding probable cause to search a residence or to arrest a suspect where a narcotics transaction is at issue. *See Samboy,* 433 F.3d at 160 (finding probable cause from a tip that a drug transaction would occur, corroborated by a monitored acceptance by the suspect to complete the transaction). In addition, a successful controlled delivery has provided probable cause for an arrest, even though the proper and more constitutionally sound process is to use the controlled delivery as a condition precedent to an anticipatory search warrant. *See United States v. Conley,* 156 F.3d 78, 81 (1st Cir. 1998); *United States v. Robinson,* 103 Fed.Appx. 261, 262 (9th Cir.2004). Finally, in *United States v. Dessesaure,* the First Circuit addressed a district court's concern that probable cause to search a car for drugs does not automatically provide probable cause to search that suspect's apartment. 429 F.3d 359, 368 (1st Cir.2005). The First Circuit disagreed and found sufficient probable cause. *Id.* The court did so by evaluating the totality of the circumstances but noting that the address on the car's registration linking the item to the apartment was a factor in support of the finding. *See id.*

Here, probable cause could have existed that the package contained narcotics. The controlled delivery of the suspect package is assumed to have been completed. That controlled delivery provided probable cause to arrest its receiver, and it verified a suspected nexus between the address of a package believed to contain narcotics with DeMayo's home. As a result of these facts, this Court, under this procedural straightjacket, cannot conclude that no probable cause existed. The existence of exigent circumstances must therefore be determined.

■■■ Determining exigent circumstances, like finding probable cause, is generally described as a "fact-intensive" discipline that must be made on a case-by-case basis. *Wihbey,* 75 F.3d at 766. An exigency may justify a warrantless search if "there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." *Wilson,* 36 F.3d at 209. The First Circuit has found exigent circumstances to include: (1) hot pursuit of a felon; (2) threatened destruction of evidence; (3) risk of flight by the defendant; and (4) threat of danger to the public or to the police. *Wihbey,* 75 F.3d at 766. Proof that such circumstances exist must be supported by "particularized, case-specific facts, not simply generalized suppositions." *Samboy,* 433 F.3d at 158.

Nugent and Lugas point to two of the above exigencies to justify their protective sweep. First, they justify their action based on officer safety, arguing according to multiple inferences that the package likely contained narcotics, the shipment of narcotics likely means the distribution of narcotics, and the distribution of narcotics is likely accompanied by weapons and violence. *See* Defs. Mem. at 4 (citing *United States v. Acosta–Colon,* 157 F.3d 9, 24 (1st Cir.1998)). Second, they argue that once delivery was made, they could not leave the package for fear it would be distributed or destroyed. *Id.*

■■■ Contrary to these assertions, the DEA Report contains no facts that would support the reasonable belief that any of the officers on that day was in danger. Not one particularized, case-specific fact

would lead an officer on that day to believe anyone was armed inside DeMayo's home. The allusion to narcotics distribution and violence may be a reality, but the warrant process exists and is preferred in light of general realities. *See Samboy*, 433 F.3d at 158. Reliance solely on this assertion, no matter how compelling in the abstract, would provide too generalized of a statement to support a finding of exigent circumstances. *See Acosta–Colon*, 157 F.3d at 19.

The second argument attempts to fit Nugent and Lugas within a destruction of evidence theory. They argue that "someone else in the house might have taken steps to forcibly grab that package of narcotics." Defs. Mem. at 9. Such a theory is speculative and inconsistent with the application of this exception to the warrant requirement. The fear of destruction of evidence arises when an officer reasonably believes that an action will likely result in the loss of evidence over which the officer has no control. *See United States v. Banks*, 540 U.S. 31, 37–38, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003). This case demonstrates the exact reverse of that principle. The police officers were themselves in control of the evidence. They chose to initiate a controlled delivery, presumably to develop evidence from which to arrest the recipient of the package. When operating in a warrantless context, such a speculative fear of losing the package does not create the exigency required to search a home. *See Vasquez v. United States*, 454 U.S. 975, 988, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981) (holding the specific facts justifying a reasonable belief in the imminent destruction of evidence insufficient to support a warrantless entry); *United States v. Wilson*, 36 F.3d 205, 209–10 (1st Cir.1994); *United States v. Duchi*, 906 F.2d 1278, 1283–84 (8th Cir.1990) (holding that evidence must be suppressed where the police created the exigency that the suspect would open a tampered package and immediately destroy the evidence).

Furthermore, even assuming *arguendo* that exigent circumstances were present, they were foreseeable and deliberately created by the government. When the government fully anticipates a search and seizure, it may not, absent countervailing factors, rely on exigent circumstances to avoid the warrant requirement. *Niro v. United States*, 388 F.2d 535, 539 (1st Cir. 1968). In addition, the government may not deliberately create the exigent circumstances on which it then relies. *Samboy*, 433 F.3d at 160; *United States v. Cresta*, 825 F.2d 538, 553 (1st Cir.1987). Unforeseeability, however, "has never been recognized as an element of the exigent circumstances exception." *Cresta*, 825 F.2d at 553. Additionally, an "exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action." *Cardwell v. Lewis*, 417 U.S. 583, 595–96, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

In this case, no exigent circumstances "arose" during the initiated controlled delivery. The protective sweep occurred in accordance with a "pre-arranged signal" almost immediately after the first undercover agent made contact with DeMayo's father. DEA Report at 3. The exigent circumstances relied upon for justification were thus anticipated, expected, and foreseeable. Finally, the government deliberately created the exigency. *See Cresta*, 825 F.2d at 553. The First Circuit has "refused to find exigent circumstances where the 'circumstances [were] created by government officials who unreasonably and deliberately delay[ed] or avoid[ed] obtaining the warrant.'" *Samboy*, 433 F.3d at 160 (citing *United States v. Rengifo*, 858 F.2d 800, 804 (1st Cir.1988)). A necessary element in such a determination is whether

the government had control over the time of the delivery. *Cresta,* 825 F.2d at 553. This element is clearly found on the record evidence and is supported by the arrangement for delivery while posing at UPS employees. *See* DEA Report at 2.

Additionally, the police must have had time to seek and secure a search or an arrest warrant. *See Samboy,* 433 F.3d at 161. The First Circuit has held the circumstances not exigent where the police had three hours to secure a warrant. *See United States v. Beltran,* 917 F.2d 641, 642 (1st Cir.1990). Here, the drug dog alert to the package occurred at 9:15 AM and the controlled delivery occurred at approximately 11:25 AM. DEA Report at 1–2. This time period is well within the range recognized by the First Circuit as sufficient to secure a warrant. The sufficiency of the two hour time period is further supported by Nugent's appearance before a clerk magistrate that same day at 2:25 PM to secure a search warrant for the suspect package. DEA Report at 5.

As a result, the circumstances that Nugent and Lugas faced when conducting their warrantless protective sweep of De-Mayo's home were not exigent. Even assuming that exigent circumstances existed, they were foreseeable and deliberately created by the government. The lack of exigent circumstances thus bars the application of an exception to the general and presumptively unconstitutional conclusion that must attach to Nugent's and Lugas's warrantless entry into DeMayo's home.

## C. Qualified Immunity

 After a constitutional violation is found, the Court must then consider whether Nugent and Lugas escape liability based on the affirmative defense of qualified immunity. Defs. Mem. at 9–11. Qualified immunity is designed to protect most public officials by providing "ample protection to all but the plainly incompe-

tent or those who knowingly violate the law." *Riverdale Mills Corp. v. Pimpare,* 392 F.3d 55, 60 (1st Cir.2004). To pierce a defense of qualified immunity, DeMayo must show that: (1) he suffered a deprivation of an actual constitutional right; (2) that right was clearly established at the time of the alleged violation; and (3) an objectively reasonable officer situated similarly to the defendants would have understood the targeted conduct to violate that clearly established constitutional right. *Abreu–Guzman v. Ford,* 241 F.3d 69, 73 (1st Cir.2001).

In the present procedural posture, qualified immunity is raised as an affirmative defense to DeMayo's motion for a judgment on the pleadings. In reaching this defense, the Court first asked, and answered in the affirmative, whether De-Mayo suffered a deprivation of a constitutional right. The preceding discussion, therefore, satisfies the first prong of the analysis. *See Riverdale Mills Corp.,* 392 F.3d at 61–62.

The second prong asks whether the constitutional right that Nugent and Lugas violated was "clearly established" at the time of the incident. *Id.* at 65. The core concern under this prong of the analysis is whether an officer would have notice that his or her conduct was unlawful. *Id.* This requires, as an initial matter, that the violated constitutional right be defined "at the appropriate level of specificity." *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The definition must not be too abstract to provide notice, but it does not need to be tied too narrowly to the exact facts of the case at issue. *Riverdale Mills Corp.,* 392 F.3d at 66.

The proper definition in this case is not whether an officer on May 6, 2004, should have understood based on prior law that it was unlawful, without a warrant or consent, to enter into one's home to conduct a

search absent exigent circumstances. That more general question, a question too abstract for this analysis, is readily answered in the affirmative. In both *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002), the Supreme Court squarely addressed this question and asserted the constitutional right. As a result, the more general question is answered by a "clearly established" constitutional rule. *See Payton*, 445 U.S. at 586, 100 S.Ct. 1371; *Tower v. Leslie–Brown*, 326 F.3d 290 (1st Cir.2003) ("[t]he unlawfulness of entering a person's home to effectuate a warrantless arrest in the absence of exigent circumstances was clearly established at the time of [the defendant's] arrest"); *Solis–Alarcon v. United States*, 432 F.Supp.2d 236, 247 (D.P.R.2006) (holding qualified immunity pierced because a reasonable officer would have known that it was unlawful to conduct a warrantless search of a home without consent and where no exigent circumstances were present).

This case presents the more narrow issue of whether the government may set up a controlled delivery of contraband to a home and then, absent some unexpected exigent circumstances, conduct a "protective sweep" of that home. Nugent and Lugas cite *United States v. Lawlor*, 406 F.3d 37 (1st Cir.2005), where the First Circuit upheld a protective sweep of a home when incident to a formal arrest despite the arrest occurring just outside the house. *Id.* at 41. *Lawlor* is inapplicable and distinguishable, however, because no arrest occurred here. *See* DEA Report at 5. Nugent and Lugas only issued a criminal summons and never arrested DeMayo's father. *Id.; Petersen v. Farnsworth*, 371 F.3d 1219, 1222 (10th Cir.2004) (distinguishing between a surrender in accordance with a criminal summons and an "arrest of a suspect by an officer performing ordinary law enforcement duties"). In the absence of a formal arrest that creates the search at issue incident to that arrest, the more malleable Fourth Amendment standard is not applicable. *See Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (describing the proper scope of a search incident to an arrest).

■ Despite the inapplicability of *Lawlor*, the Court also fails to find any other case that specifically holds on this properly narrowed issue. That absence prevents a finding that this constitutional right was "clearly established." Even though such a right may be reasonably inferred from the clear nature of the more general rights at stake, such an inference neither meets nor satisfies the test under a qualified immunity analysis.

As a result of not finding the constitutional right at stake "clearly established," this Court is not compelled to reach the third prong of qualified immunity. This case, however, commends itself to comment on this prong. On this final requirement before qualified immunity may be pierced, the Court must engage in an objective inquiry into whether a reasonable officer would know, on the specific facts of this case, that his or her action violated a "clearly established" rule. *Anderson v. Creighton*, 483 U.S. 635, 640–41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Abreu–Guzman*, 241 F.3d at 73. The subjective intent of Nugent and Lugas is irrelevant to the analysis. *See Anderson*, 483 U.S. at 641, 107 S.Ct. 3034. The facts of the case, however, must be considered to determine whether Nugent and Lugas reasonably and even mistakenly believed probable cause and exigent circumstances were present. *See id.*

It bears repeating that no facts in this case could support a conclusion that both probable cause and exigent circumstances

existed. Nugent and Lugas's entry into DeMayo's home occurred almost immediately after DeMayo's father opened the door. No facts prior to the entry suggested violence. The concerns about the destruction of evidence were limited to the suspect package of which the officers had control. *See Duchi*, 906 F.2d at 1283–84. This is not a case where the officers were told incorrectly that a valid warrant had been issued, *see Tower*, 326 F.3d at 296, or where they relied upon plausible instructions from a fellow officer or superior that would establish exigent circumstances, *see Bilida v. McCleod*, 211 F.3d 166, 174–75 (1st Cir.2000).

■■■ In fact, neither Nugent nor Lugas detailed in their reports or argue now any relevant factual circumstances antecedent to the entry other than the existence of a package suspected of containing, but not confirmed to contain, narcotics. The existence of a suspect package itself does not create exigent circumstances. *See United States v. Scheffer*, 463 F.2d 567, 575 (5th Cir.1972) (holding no exigent circumstances where the delivery of cocaine was controlled). As discussed above when analyzing the evidence of probable cause and exigent circumstances, the conclusion that no reasonable officer would find exigent circumstances in this case does not depend upon a factual weighing. Instead, this Court notes *the absence* of any facts upon which such a determination could be structured. Nevertheless, in the absence of any controlling case clearly condemning protective sweeps in controlled delivery situations absent exigent circumstances, this Court must rule that Nugent and Lugas have qualified immunity on the undisputed facts alleged by DeMayo.

This *is* that case: In the future, of course, absent alteration by higher courts, law enforcement agents must understand that they simply cannot, absent truly exigent circumstances, set up a controlled delivery in order to conduct a "protective sweep" of a home. Personal liability will attach to any repetition of what happened here. *See Ciulla v. Rigny*, 89 F.Supp.2d 97 (D.Mass.2000) (discussing the manner in which constitutional rights become "clearly established").

## III. CONCLUSION

Accordingly, Christopher DeMayo's motion for a partial judgment on the pleadings as to liability [Doc. No. 15] is DENIED and the case is dismissed on the ground of qualified immunity as urged by Nugent and Lugas.

SO ORDERED.